TALLMADGE and others *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF RENSSELAER, and others.

It is the duty of the board of supervisors, at their annual meeting, to examine the several assessment rolls returned to them, and to compare them with each other, and thus to ascertain what relation they bear to each other. Having done this, they are authorized to add to, or deduct from the aggregate valuation of the real estate in any town or ward, such amount as, in their opinion, will be necessary in order to produce a just relation between all the towns and wards.

If they determine it to be necessary to add to the aggregate valuation of the real estate in a particular town, the letter of the law requires them, instead of adding a gross sum to the aggregate valuation, to add to the assessed valuation a specified sum upon each one hundred dollars.

Tallmadge *v.* Supervisors of Rensselaer County.

Thus where a board of supervisors deeming it necessary to add $300,000 to the aggregate valuation of the real estate of a particular town, resolved to add that sum in gross, to the assessed valuation of the town; *it was held,* that the board should have voted to add $19.54 to every hundred dollars, amounting in the aggregate to $300,000, instead of voting to add $300,000, amounting to $19.54 upon every hundred dollars of the assessors' valuation; but that this was not a material departure from the requirement of the statute.

*It seems* that it is competent for a board of supervisors, after having determined all the questions within their jurisdiction, relating to the assessment rolls and collectors' warrants, to appoint a committee with power to annex the warrants to the rolls, when the clerical operation of extending the taxes shall be completed, and to deliver them to the collectors.

MOTION for an injunction. The complaint alleged that the board of supervisors during their annual session of 1855, adopted an amended report on equalization whereby they proposed to add $300,000 in gross to the assessed valuation of the town of Schodack, which amount, with other sums to be added to another town and the city of Troy, were to be deducted in other gross sums from other towns, and that the addition of the sum of $300,000 to the aggregate valuation of the town of Schodack, was not the result of any computation made by adding any percentage or sum upon the hundred, and was made without taking into consideration the comparative valuations in the different towns. The complaint further stated that the board of supervisors, on the 29th day of December, 1855, adjourned until the 4th day of February, 1856, without having completed their assessment rolls, and having appointed a committee consisting of three of their number, together with the clerk of the board, to attach the collectors' warrants to the assessment rolls; that the warrants, which were to be filled out afterwards by the clerk and attached to the rolls by him, when the rolls should have been equalized and the taxes extended, were all signed in blank before the adjournment, and before the rolls were completed.

The board of supervisors, and the members of the committee appointed to attach the collectors' warrants to the assessment rolls, and the clerk of the board, were made defendants. The relief demanded in the complaint was, that the defendants be restrained from adding the sum of $300,000, or any other sum, to the assessed valuation of the town of Schodack, or issuing or

delivering, or causing to be issued or delivered any warrant to the collector of the town, for the collection of any tax in that town, other than upon the assessed valuation of the town, as returned by its assessors. The suit was brought by the plaintiffs, as tax payers of the town of Schodack, on behalf of themselves and such other taxpayers of the town as might choose to unite in the action.

The defendants, in opposition to the motion, read the affidavits of several members of the board of supervisors, stating that the sum of $300,000 was added to the assessed valuation of the town of Schodack, because the supervisors thought the relative valuation of the town too low, as compared with other towns in the county and the city of Troy; that they examined the assessed valuation of the town and compared it with the assessed valuations of other towns and the city of Troy, and that the result of such examinations led them to the conclusion that it was proper to add about $300,000, or about the sum of $19.54 upon every hundred dollars, to the assessed valuation.

It was further stated by the defendants in their affidavits, that before the board of supervisors adjourned on the 29th of December, the assessment rolls were substantially completed, and some of them entirely so, and as to the residue, only some clerical additions and computations remained to be made, the principles and mode of computation having been agreed upon; and that they were completed immediately afterwards, and, with the collectors' warrants attached, were delivered to the collectors; that the only reason why the collector's warrant had not been delivered to the collector of the town of Schodack before the commencement of this suit was, that the collector was absent from the county; that the warrants were signed by the supervisors at about the close of their proceedings, with directions to attach them to the assessment rolls, many of which were actually completed, and the warrants actually attached at the time of the adjournment, and the others only requiring some slight clerical computations or footings to be added.

*A. J. Parker* and *S. W. Tallmadge*, for the plaintiffs,

*H. Hogeboom* and *D. L. Seymour*, for the defendants.

HARRIS, J.   It was the duty of the board of supervisors to examine the several assessment rolls returned to them, and to compare them with each other, and thus to ascertain what relation they bore to each other.   Having done this, they were authorized to add to, or deduct from the aggregate valuation of the real estate in any town or ward, such amount as, in their opinion, would be necessary in order to produce a just relation between all the towns and wards.   The only restriction upon this power to increase or diminish the aggregate valuation of the real estate in any town or ward, is found in the last clause of the 31st section of the statute relating to the equalization of assessments, &c. (1 *R. S.* 395,) which declares that, in making such equalization, the board shall not reduce the aggregate valuations of the county below such aggregate valuations as made by the assessors.

It cannot be denied, therefore, that the board of supervisors had the power to add $300,000 to the aggregate valuation of the real estate of Schodack, if in their opinion this was necessary, for the purpose of equalizing the valuation of the real estate throughout the county.   That they deemed it necessary would be presumed, but several of the supervisors who voted for the addition have sworn that, in their opinion, the addition was proper.   They state that in voting upon the subject of the equalization of the assessment rolls, and in all the proceedings in relation thereto, they had acted in good faith, and according to their best judgment, and with a disposition, so far as practicable, to make the equalized valuation fair and just, as between the several towns and the city of Troy, and as between each other.

It is true, that the statute authorizes the board of supervisors, in making their corrections of the assessment rolls, to add or diminish "such sums upon the hundred" as they may

deem necessary to effect the purpose specified. "The letter of
the law" required the board, instead of adding to the aggregate
valuation of the real estate of the town the gross sum of $300,-
000, to add to the assessed valuation the sum of $19.54 upon
each one hundred dollars. The board should have voted to add
$19.54 to every hundred dollars, amounting in the aggregate to
$300,000, instead of voting to add $300,000, amounting to
$19.54 upon every hundred dollars of the assessors' valuation.
The irregularity of which the plaintiffs complain, consists in the
omission of the board of supervisors to state in their resolution
to add $300,000 to the assessed valuation of the real estate of
Schodack, that they thereby add $19.54 upon each one hundred
dollars of such valuation. I cannot regard this as a material
departure from the requirement of the statute. The board has
done the thing they were authorized to do, and I think they
have done it, substantially, in the manner in which they were
authorized to do it. I can conceive of no possible advantage
which could have resulted to any one from a more literal com-
pliance with the terms of the statute.

It does not very distinctly appear what was the state of the
assessment roll, at the time the board adjourned on the 29th of
December. The allegation of the complaint is, that the assess-
ment rolls were not completed, and that a committee consisting
of three supervisors was appointed, who, with the clerk of the
board, were to attach the warrants to the rolls. The affidavit
of the supervisors and clerk states that the assessment rolls
were *substantially* completed at the time of the adjournment;
that part of them were wholly so, and, in respect to the residue,
it only remained to make some clerical computations and foot-
ings. I suppose it may safely be assumed that the corrected
valuations of all the towns and wards had been determined upon,
and that the amount of tax to be charged upon each town had
been ascertained, and that all that remained to be done was, to
extend the amount to be paid by the several taxpayers at such
rate upon the hundred dollars as would raise the amount charged
upon the town. This, of course, was but a mere matter of com-

putation, to be performed, not by the board of supervisors, but by some clerk to be employed by the board, or under its direction. I am not prepared to say that it was not competent for the board, having determined all the questions within their jurisdiction relating to the assessment rolls and collectors' warrants, to appoint a committee with power to annex the warrants to the rolls when the clerical operation of extending the taxes should be completed, and delivering them to the collectors. The provision of the statute is, that the board shall *cause* the corrected assessment roll of each town to be delivered to the collector, and that to such roll there shall be annexed a warrant under the hands and seals of the board of supervisors. I cannot regard it as a very great stretch of construction to say, that these acts, wholly ministerial as they are, may be performed by a committee of the board, and that too, during its recess. At any rate, I am unwilling to make an irregularity so technical, if, indeed, it be an irregularity at all, the ground of an injunction which must obviously result in great public inconvenience.

The examination I have given this case has resulted in a strong apprehension, perhaps I may say conviction, that some injustice has been done to the town of Schodack. But if so, it is beyond the reach of any judicial review. The evil, if any, results from the peculiar constitution of the board of supervisors. Each member must feel to a greater or less extent the influence of a decided personal interest, leading him to favor any proposition which may tend to diminish the burden upon himself and his constituents, and increase that of others. When it happens, as in this case, that the valuation of the taxable property as returned by the assessors of the towns, is greatly reduced in a majority of the towns in the county, and equally increased in a few other towns, it may well excite the suspicion that the change is the result of a combination of the representatives of the majority of the towns to relieve their own constituents from their just share of public burden, rather than their own unbiased judgment. But this evil, to whatever extent it may exist, is beyond the reach of judicial power. The appeal of those who

feel themselves aggrieved, must be, not to the courts but to the legislature.  The motion for an injunction must be denied, but without costs,

[ALBANY SPECIAL TERM, February 15, 1856.  *Harris*, Justice.]